(76 Hun, 613; 77 Hun, 332.)

OELBERMANN et al. v. NEW YORK & N. RY. CO. et al.

(Supreme Court, General Term, First Department.    April, 1894.)

1. RAILROAD COMPANIES—PURCHASING STOCK OF OTHER RAILROAD COMPANIES.
    Laws 1892, c. 688, § 40, providing that any stock corporation, except moneyed corporations (banking and insurance companies), may purchase stock of other corporations, applies to railroad companies, and is not restricted by Laws 1890, c. 565 (Railroad Law), §§ 78, 79, authorizing a railroad company to purchase stock of another railroad company, of which it is a lessee.

2. SAME—RIGHT TO VOTE STOCK PURCHASED—INJUNCTION.
    Where a railroad company purchases the stock of another company (Laws 1892, c. 688, § 40), it has the rights of any other stockholder, and will not be enjoined from voting such stock.

Appeal from special term, New York county.

Action by Emil Oelbermann and others against the New York & Northern Railway Company and the New York Central & Hudson River Railroad Company. From an order denying a motion for an injunction to restrain defendant last named from voting at a meeting of stockholders of the New York & Northern Railway Company, plaintiffs appeal. Affirmed.

The opinion of Mr. Justice Andrews, at special term, is as follows:

After a careful consideration of this matter, I am of the opinion that the motion for an injunction, pending the litigation, should be denied. It is undoubtedly true, as claimed by the learned counsel for the plaintiffs, that it has frequently been decided by the courts that corporations cannot purchase the stock of other corporations unless they are expressly authorized by law to make such purchases. Section 40 of chapter 688 of the Laws of this state, passed in 1892, however, expressly authorizes such purchases to be made in certain cases by any stock corporation, domestic or foreign, except moneyed corporations, which are defined by section 3 of chapter 687 of the Laws passed in the same year to be those "formed under or subject to the banking or the insurance law." I am unable to agree with the counsel for the plaintiffs in his contention that said section 40 does not apply to railroad corporations. The language used is "any stock corporation, domestic or foreign, now existing, or hereafter organized, except moneyed corporations, may purchase," etc.; and, under the definitions contained in section 3 of said chapter 687, a railroad corporation is certainly a stock corporation. The language used is free from uncertainty and ambiguity, and, moreover, if the revisers of the statutes and the legislature had intended that this section should not apply to railroad corporations, I can imagine no reason why those corporations, as well as moneyed corporations, were not mentioned in the exception. Nor am I able to agree with the counsel for the plaintiffs in his contention that certain provisions of the "railroad law" (chapter 565 of 1890) are inconsistent with those of said section 40, and that, therefore, under section 33 of said chapter 687, said last-named provisions must prevail. Sections 78 and 79 of that law authorize one railroad corporation to purchase the stock of another railroad corporation, in certain cases, when the latter corporation has been leased to the former; and section 80 forbids railroad corporations, owning or operating parallel or competing lines of railroad, to merge or consolidate or enter into any contract for the use of their respective roads, or lease the same, one to the other, unless a majority of the board of railroad commissioners shall consent thereto. There is nothing, however, in these sections, nor in the other parts of such railroad law, which expressly or by fair implication prohibits a railroad corporation from exercising the power expressly conferred by section 40 of chapter 688 of the Laws of 1892 upon every stock corporation, except moneyed corporations, to purchase stock in other corporations; and it necessarily follows that, under the provisions of

section 33 of chapter 687, the above-cited provisions of the railroad law must be deemed to be in addition to said section 40, so far as it applies to railroad corporations, and both provisions are applicable to that class of corporations. It is contended, however, that the case at bar is not one of those in which, according to the terms of said section 40, a stock corporation can purchase the stock of another corporation; but this contention does not seem to me to be well founded. It does not appear by the papers before me whether or not the New York Central & Hudson River Railroad is authorized by its original or by an amended or supplemental certificate to purchase the stock of other railroad corporations; but the New York & Northern Railway Company "is engaged in a business similar to that of" the first-named company, and is a corporation with which said first-named company "is, or may be, authorized to consolidate;" and these are two of the cases in which said section 40 expressly authorizes one stock corporation to purchase the stock of another corporation. With the wisdom or propriety of giving one railroad corporation a general power to purchase the stock of other railroad corporations the court has nothing to do. It has been repeatedly decided by the courts of this state, and by many others, that, unless expressly authorized by law, it is ultra vires and contrary to public policy for any corporation to purchase the stock of another corporation. The legislature of this state, however, has seen fit to make a radical change in the law, and, so long as the present statute remains in force, the courts must enforce it. Having reached the conclusion that the New York Central & Hudson River Railroad corporation had the right to buy the stock of the New York & Northern Railway corporation, I am of the opinion that it has the right to vote upon such stock. Said section 40 provides that the corporation holding the stock of another corporation "shall possess and exercise in respect thereof all the rights, powers and privileges of individual owners or holders of such stock." Section 20 of said chapter 687 provides that every member of a stock corporation who is not in default in the payment of his subscriptions upon his stock, or disqualified by the by-laws, shall be entitled to one vote for every share of stock held by him for 10 days immediately preceding the election; and it appears by the affidavits submitted on behalf of the defendants that the stock mentioned in the complaint was held by the New York Central & Hudson River Railroad Company for more than 10 days immediately preceding the 8th day of November, the day appointed for the election. Under these circumstances, I am of the opinion that the cases cited by plaintiffs' counsel, in which it has been held that certain corporations should be restrained from voting upon stock held by them, do not apply. In Milbank v. Railroad Co., 64 How. Pr. 20, upon which great reliance seems to be placed, it was expressly decided that the purchase of the stock, upon which the defendant sought to vote, by the predecessor of the defendant, "was unauthorized and in violation of the statute, and was consequently ultra vires." It is obvious that, if I am right in my conclusion that the New York Central & Hudson River Railroad Company had the right to buy the stock in question, this case and others cited by plaintiffs' counsel have no application to the present case. As, in my opinion, there is no precedent for granting an injunction in a case like this, I do not deem it necessary to go into an extended discussion, for the purpose of showing that, upon the reason of things, an injunction should not be granted. It is quite possible that in this case and other similar ones the fact that a great railroad corporation has the right to purchase the stock of other railroad corporations may put it in the power of the corporation making such purchases to do injustice to the minority stockholders of such other corporations; but assuming that the legislature has made such purchases lawful, and has enacted a law that the purchaser shall have all the rights, powers, and privileges of individual owners and holders of such stock, one of which rights is the right to vote, I do not see how a court of equity has the power to restrain such a purchaser from voting on the stock so purchased, upon the allegation or proof that it intends to cause a board of directors to be elected, who, by their action or nonaction, may injure or prejudice the interests of the minority stockholders of the corporation, whose stock has been so purchased. The motion for an injunction will be denied, with $10 costs, and the order will be settled on notice.

Argued before VAN BRUNT, P. J., and O'BRIEN and FOLLETT, JJ.

A. H. Holmes, for appellants.

A. Green, for respondents.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on opinion of the court below.

---

(8 Misc. Rep. 472.)

STUART v. BLATCHLEY et al.[1]

(Supreme Court, Special Term, Broome County. December, 1893.)

PLEADING—DEMURRER TO ANSWER OF CODEFENDANT.

Defendant cannot demur to the answer of codefendant, as there is no provision in the Code of Civil Procedure authorizing a demurrer in such case.

Action by Frances E. Stuart against Ambrose Blatchley and others. Defendants Watson and others demur to portions of the answer of defendants Brown and Kent. Demurrer overruled.

Babcock, Sperry & Van Cleve, for defendants Nellie V. Watson et al.

A. D. Wales, for defendants Silas P. Brown et al.

FORBES, J. This is an action of partition. The defendants Silas P. Brown and Ellen Brown, his wife, and James E. Kent and Ella Kent, his wife, answered the plaintiff's complaint in the above-entitled action, and served a copy of their answer upon the other defendants, Nellie V. Watson, Milla L. Watson (Ogden), and Henry L. Watson, under section 1543 of the Code of Civil Procedure, controverting in the manner required by section 521 of the Code of Civil Procedure the title and interests of their codefendants, for the purpose of settling certain claims and rights in said action as between themselves. The defendants Nellie V. Watson, Milla L. Watson (Ogden), and Henry L. Watson demur to the ninth subdivision of said answer, stated in folios 9 to 15, inclusive, and assign as a "ground for said demurrer that said answer is insufficient in law upon the face thereof," which may be taken, perhaps, as a claim that said subdivision does not state facts sufficient, upon the face of the answer, to constitute a controverted claim against the defendants demurring. Briefs have been submitted by the respective attorneys for these contending defendants, and the principal controversy seems to be the right of the demurrants to raise this issue of law. If that right is determined in favor of the demurrants, then the next question to be settled is, treating the ninth subdivision as a complaint, does it state facts sufficient, upon its face, to constitute a cause of action? or, treating it as an answer, does it set forth facts sufficient to constitute an affirmative defense.

[1] Affirmed by 28 N. Y. Supp. 800.